UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES CURRAN,

        Plaintiff,

v.                                                     Case No. 8:22-cv-1962-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

### A.   Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 306–12). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 140–46, 149–59). Plaintiff then requested an

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

administrative hearing (Tr. 207). An Order of Dismissal was issued on May 24, 2021, dismissing the request for hearing due to a procedural defect (T. 164). Plaintiff filed a timely request for review (T. 254–55) The Appeals Council remanded the case back to the ALJ for further proceedings (T. 169–72). On March 8, 2022, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 35–77). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 9–32). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1961, claimed disability beginning March 1, 2014 (Tr. 140). Plaintiff was 55 years old on the date last insured (Tr. 23, 140). Plaintiff obtained a high school degree and four years of college (Tr. 41, 357). Plaintiff's past relevant work experience included work as Corrections Officer (Tr. 23, 43, 372). Plaintiff alleged disability due to the following conditions: diabetes; stage 1 prostate cancer; skin cancer; a herniated disc on his lower back; "pdcs"; a heart condition; obesity; a "fake hip"; a "paresthetic right knee"; and high blood pressure (Tr. 356).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since August 8, 2016, the alleged onset date (Tr. 15). After conducting a hearing and reviewing the evidence of record, the ALJ

determined Plaintiff had the following severe impairments: cervical spine degenerative disc disease and multilevel disk herniation with right upper extremity radiculopathy; status post cervical and right shoulder sprain; carpal tunnel syndrome; and obesity (Tr. 15). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) except the claimant was able to occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds and stand, walk, and/or sit about 6 hours each with normal and customary breaks in an 8-hour workday. The claimant was not able to climb ladders, ropes, or scaffolds and occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant was able to occasionally push/pull 20 pounds with the dominant right upper extremity. The claimant was able to frequently reach, but only occasionally reach overhead, with the right upper extremity. The claimant was able to frequently handle and finger with the right upper extremity. The claimant had to avoid concentrated exposure to extreme cold and avoid all use of hazardous machinery and unprotected heights.

(Tr. 17). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 18).

3

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 22). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a Guard, Security (DOT 372.667-034), Gate Guard (DOT 372.667-030), and Patrol Conductor (DOT 372.677-010) (Tr. 24). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must

determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the

individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether

the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred in finding that Plaintiff had transferable skills from his past relevant work to other work. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

If the ALJ reaches the fifth step of analysis for Social Security benefits, the Commissioner bears the burden of determining whether there is other work available in significant numbers in the national economy that the claimant can perform. *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995). At step five, whether the claimant can adjust to other work in the national economy is to be determined in one of two ways: by applying the Medical Vocational Guidelines ("grids") or by relying on a VE. *See Phillips v. Barnhar*t, 357 F.3d 1232, 1239–40 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c. The grids establish a matrix for determining whether jobs requiring certain qualifications exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). When a claimant's qualifications correspond to the specified job requirements, the grids direct a finding about whether the claimant is considered disabled. *Id.* at 462. But when a "claimant is unable to perform a full range of work at a given [RFC] or when a claimant has non-exertional impairments that significantly limit basic work skills," the ALJ must consult a VE and may not rely

exclusively on the grids. *See Phillips*, 357 F.3d at 1242–43 (citing *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)).

The question of transferability of job skills is relevant to this fifth step of analysis in some circumstances, including if the grids are used.[2] Transferability of job skills is also relevant under SSA regulations where a claimant is a person of advanced age (over age 55). In considering whether a person of advanced age (over age 55) can perform a job, 20 C.F.R. § 404.1568 provides that:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide if you have transferable skills as follows. If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (See § 404.1567(a) and § 201.00(f) of appendix 2.) If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work (see § 404.1567(b)). If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work,

---

[2] For example, Grid Rules 201.14 and 201.15 both apply to claimants who are closely approaching advanced age, are high school graduates, and have skilled or semi-skilled work experience. *See* 20 C.F.R. pt. 404, subpt. P. app. 2, § 201.00, Table No. 1. They differ only in terms of transferability of skills. *See id.* Under Grid Rule 201.14, if the claimant's previous work experience was "skilled or semiskilled" and those skills are "not transferable," then the claimant is disabled. *Id.* On the other hand, under Grid Rule 201.15, if the claimant's previous work experience was "skilled or semiskilled" and those skills are "transferable," then the claimant is not disabled. *Id.*; *see Lapica v. Comm'r of Soc. Sec.*, 501 F. App'x 895, 897 (11th Cir. 2012).

we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (See § 404.1567(b) and Rule 202.00(f) of appendix 2 to this subpart.)

20 C.F.R. § 404.1568(d)(4).

Here, the ALJ found Plaintiff unable to perform a full range of work at an exertional level: the ALJ limited Plaintiff to performing light work with a number of additional limitations, including only occasionally lifting or carrying 20 pounds and standing, walking, and/or sitting "about 6 hours each" with no climbing of "ladders, ropes, or scaffolds" and only "occasionally" climbing "ramps and stairs, balanc[ing], stoop[ing], kneel[ing], crouch[ing], and crawl[ing]" (Tr. 17). Thus, the ALJ did not rely exclusively on the grids but rather looked to the grids as a "framework (Tr. 24). Additionally, Plaintiff is considered a person of advanced age because he is over the age of 55 (Tr. 23, 140). Accordingly, because the ALJ limited Plaintiff to perform light work[3] (Tr. 17), the ALJ was required to make findings regarding whether Plaintiff possessed transferable skills.

In making the determination of whether Plaintiff could perform other work in the economy, the ALJ relied upon the testimony of a VE (Tr. 24). At the hearing,

---

[3] Because the ALJ limited Plaintiff to perform *light* work but with a number of additional limitations, it is unclear whether the light work requirements or the heightened requirements for sedentary work limitations would apply. However, because the ALJ was required to make transferability findings regardless of whether he instituted sedentary or light work limits, the Court need not answer this question. As will be discussed in turn, under either standard the ALJ's decision must be remanded because the ALJ did not find Plaintiff had transferable *skills* but *aptitudes*.

the VE identified several skills that Plaintiff acquired while performing his past work as a Corrections Officer (Tr. 58). The VE explained the skills of "active listening, monitoring, critical thinking, and social perceptiveness" would transfer to Security Guard, Gate Guard, and Patrol Conductor positions (Tr. 58). Thus, the VE testified that a hypothetical person, such as Plaintiff, could perform the duties of a Security Guard, Gate Guard, and Patrol Conductor (Tr. 58–60, 71–72). In light of Plaintiff's past work as a Corrections Officer, the VE testified that the jobs of Security Guard, Gate Guard, and Patrol Conductor would require "little to none on the vocational adjustment" (Tr. 58). The ALJ, relying on the VE's testimony, found that Plaintiff's past relevant work as Correction Officer was semi-skilled with a specific vocational preparation (SVP) code of 4 and Plaintiff obtained the skills of active listening, monitoring, critical thinking, and social perceptiveness at this job (Tr. 23). Then, "considering the claimant's age, education and transferable work skills" together with the framework of the grids, the ALJ found Plaintiff could perform other work—as a Security Guard, Gate Guard, and Patrol Conductor—and was therefore not disabled (Tr. 23–24).

Plaintiff asserts that there was no substantial evidence to support the Commissioner's determination that he had acquired skills from his past relevant work that were transferable to the jobs identified by the VE (Doc. 11, at 3). Plaintiff posits that "[a]ctive listening, monitoring, critical thinking, and social perceptiveness" are "traits or aptitudes," not "job skills" (Doc. 11, at 3; Tr. 23). Plaintiff does not dispute that he has the skills of active listening, monitoring, critical

thinking and social perceptiveness or even that they would apply to the listed jobs; Plaintiff only disputes that these are "skills" (*see* Doc. 11).

In the determination of whether the claimant's work skills are transferable, the ALJ may rely on a VE's testimony to determine the level of skill the claimant achieved in his or her past work, whether the claimant acquired transferable skills from his or her past work, and whether the claimant can perform other jobs in the national economy. *Zimmer v. Comm'r of Soc. Sec.*, 211 F. App'x 819, 820 (11th Cir. 2006)[4] (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999)). Indeed, "[t]he VE's testimony 'trumps' other sources of information with regard to skill level and alternative jobs. Unless the VE is proven incorrect, the ALJ may rely on the VE's testimony." *Id.* (citing *Jones*, 190 F.3d at 1229–30). Here, it is not that the VE's testimony is incorrect per se; indeed, Plaintiff does not dispute its accuracy (*see* Doc. 11). Rather it is that the VE's testimony and the ALJ's finding in reliance upon it are not in reference to transferable skills, but rather aptitudes.

Transferable skills are "the skilled or semi-skilled work activities [a claimant] did in past work" than "can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). "This depends largely on the similarity of occupationally significant work activities among different jobs." *Id.* In determining whether a skill is transferable, the SSA instruct the ALJ to consider whether, as between the two jobs: "(i) The same or a

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved." 20 C.F.R. § 404.1568(d)(2).

The SSA defines skill as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." S.S.R. 82–41, 1982 WL 31389, at 2(a). Furthermore, "[i]t is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner." *Id.* Examples include activities like "making precise measurements, reading blueprints, and setting up and operating complex machinery." *Id.* The SSA contrasts skills from aptitudes or abilities:

> The regulations definition of semiskilled work in regulations sections 404.1568(b) and 416.968(b) states that semiskilled jobs "may require alertness and close attention ... coordination and dexterity ... as when hands or feet must be moved quickly to do repetitive tasks." These descriptive terms are not intended, however, to illustrate types of skills, in and of themselves. The terms describe worker traits (aptitudes or abilities) rather than acquired work skills.
>
> Skills refer to experience and demonstrated proficiency with work activities in particular tasks or jobs. In evaluating the skill level of PRW or potential occupations, work activities are the determining factors.
>
> Worker traits to be relevant must have been used in connection with a work activity. Thus, in the regulations, the trait of alertness is connected with the work activities of close attention to watching machine processes, inspecting, testing, tending or guarding; and the traits of coordination and dexterity with the use of hands or feet for the

rapid performance of repetitive work tasks. It is the acquired capacity to perform the work activities with facility (rather than the traits themselves) that gives rise to potentially transferable skills.

S.S.R. 82–41 at 2(d).

There is not ample case law on the issue of what qualifies as a skill. However, the Eleventh Circuit did consider the question in *Zimmer*, 211 Fed.App'x. at 819–20. There, the VE testified that the claimant had acquired the transferable skills of money handling and customer service while he was a waiter. *Id.* at 820–21. The claimant argued those were not skills as defined by SSR 82-41, but the Eleventh Circuit disagreed. *Id.* The Eleventh Circuit found money handling and customer service fall within the SSA's definition of skill because "[e]ven though unskilled workers perform these same behaviors, Zimmer performed them at such a high degree as to make them skills." *Id.* at 821. The Eleventh Circuit looked to the claimant's testimony to support this finding which included that "he needed a 'certain skill level' to perform his past job that required knowledge of cuisine, wine and drinks 'in a lot of detail.'" *Id.* As a result, the Eleventh Circuit concluded the VE did not err in finding claimant acquired the skills of money handling and customer service during his time as a waiter, and thus the ALJ did not err in relying on the VE's assessment of the claimant's acquired skills. *Id.*

The record in this case lacks sufficient evidence that "active listening, monitoring, critical thinking and social perceptiveness" (Tr. 23) are "acquired work skills" rather than "worker traits (aptitudes or abilities)." S.S.R. 82–41 at 2(d). Here, Plaintiff's previous relevant work was as a Correction Officer, semi-skilled, at an

13

SVP level of 4 (Tr. 23). When Plaintiff's attorney asked him whether he thought he could perform the job of Security Guard, Control Conductor, or Gate Guard, Plaintiff stated "[a]bsolutely not" and described his previous job as primarily a "physical job" where "all [he] was doing basically was doing cell extractions, uses of force" (Tr. 67–68). In terms of contact with people, he explained that he "used to deal with people that were problematic" who, when he was trying to perform a cell extraction, may "try and jump off the sink, or hide under the bed with shanks" (Tr. 69–70). In response to the ALJ's question "Do any of the skills acquired in his past work transfer to light-duty work with or without a vocational adjustment?" the VE responded "yes" and listed "active listening, monitoring, critical thinking and social perceptiveness" as the skills acquired from Plaintiff's job as a Correction Officer (Tr. 57–58). Considering these skills, the VE testified that the vocational adjustment to Security Guard, Control Conductor, or Patrol Conductor would be "little to none" and that Plaintiff would be able to "call upon his skills" to perform these jobs (Tr. 57–60, 72).

Neither the VE in her testimony nor the ALJ in his opinion elaborated on the transferable skills or spoke with Plaintiff about the requirements of his job as a Correction Officer which he might be able to "call upon" to perform these other jobs. Additionally, neither the VE in her testimony nor the ALJ in his opinion elaborated on the requirements of the other jobs she opined Plaintiff could perform. As the regulations provide, "[w]orker traits to be relevant must have been used in connection with a work activity" and provide the example that "trait of alertness is

connected with the work activities of close attention to watching machine processes, inspecting, testing, tending or guarding" and explains that "[i]t is the acquired capacity to perform the work activities with facility (rather than the traits themselves) that gives rise to potentially transferable skills." S.S.R. 82–41 at 2(d). Here, the ALJ failed to connect the traits described — "active listening, monitoring, critical thinking and social perceptiveness" — to any particular work activity which would transform them from traits into transferable skills. Indeed, the ALJ very well could have found that "monitoring" was transferable because, for example, as a Corrections Officer, Plaintiff made rounds to monitor the prisoners and as a Security Guard, Plaintiff would be required to make rounds to monitor the grounds. However, this would be a guess. For the Court to attempt to guess what supports the ALJ's decision would require the Court to reweigh the evidence. *See Winschel,* 631 F.3d at 1178; *Bloodsworth,* 703 F.2d at 1239. Accordingly, the ALJ's decision that Plaintiff has transferable skills is not supported by substantial evidence.

The Commissioner argues that the ALJ relied on the VE's testimony for his findings and thus the ALJ's findings regarding transferable skills are irrelevant "because an ALJ is not required to make a finding regarding transferability of skills when he does not rely solely on the Grids" (Doc. 12, at 8). However, the circumstances here stand in contrast to the cases the Commissioner cites; in those cases, the claimants were not of advanced age. *See Arrington v. Soc. Sec. Admin.*, 358 F. App'x 89, 95 (11th Cir. 2009) (claimant within the age 45–49 category); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004) (no age findings). Despite

the Commissioner's argument to the contrary, the transferability of job skills is not automatically irrelevant outside the context of the grids. Due to Plaintiff's advanced age, the ALJ was required to determine whether Plaintiff had "skills that [he] can transfer to other skilled or semiskilled work." 20 C.F.R. § 404.1568(d)(4). Furthermore, this error is not harmless. In considering whether a person of advanced age (over age 55) can perform a job, 20 C.F.R. § 404.1568 directs the ALJ to find that a claimant of advanced age "cannot make an adjustment to other work *unless*" the claimant "has skills that [the claimant] can transfer to other skilled or semiskilled work." 20 C.F.R. § 404.1568(d)(4) (emphasis added). Accordingly, because the ALJ did not make findings as to "*skills* that [the claimant] can transfer to other skilled or semiskilled work" but rather general traits or aptitudes, the error was not harmless. 20 C.F.R. § 404.1568(d)(4) (emphasis added); *see Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 732–33 (11th Cir. 2011) (a court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion") (citation omitted).

Because the ALJ's decision is not supported by substantial evidence, remand is required. Upon remand, the ALJ should make findings as to the "skills that [Plaintiff] can transfer to other skilled or semiskilled work." 20 C.F.R. § 404.1568(d)(4).

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1.   The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.   The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 14th day of September, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record

17